UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | )| |
|---|---|---|
| GSH TRADEMARKS LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1-20-CV-00271-LO-MSN |
| | ) | |
| SIA "BALTMARK INVEST," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff GSH Trademarks Limited's motion for default judgment (Dkt. No. 28) following remand by order dated February 25, 2021. (Dkt. No. 49). On March 5, 2021, this Court ordered plaintiff to move for leave to amend its complaint or inform the Court of its intention to rely on the original complaint within two weeks. (Dkt. No. 50). On March 18, 2021, plaintiff filed a "Notice of Intent to Not Amend Complaint." (Dkt. No. 51). The motion for default judgment is now ripe for review as directed in the remand order. Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends denying entry of default judgment for the reasons that follow.

**I.     Procedural Background**

On March 10, 2020, plaintiff filed its complaint seeking (1) reversal of the decision of the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office under 15 U.S.C. § 1071(b)(1) and 37 CFR § 2.145, (2) cancellation of the trademark under 15 U.S.C. §§ 1064(3) and 1127, and (3) a declaratory judgment of no trademark infringement by plaintiff. (Dkt. No. 1).

On July 6, 2020 (Dkt. No. 16) and July 23, 2020 (Dkt. Nos. 20, 21), plaintiff filed affidavits with the Court indicating service was effectuated in accordance with the Court's May 5, 2020 Order permitting alternative service. (Dkt. No. 15).

On August 14, 2020, plaintiff requested that the Clerk of Court enter default against the defendant (Dkt. No. 22), and default was entered on August 17, 2020 (Dkt. No. 23). On November 3, 2020, plaintiff moved for default judgment (Dkt. No. 28) and filed a declaration from Viktoriia Kobzar, Director of GSH, which the Court construed as new evidence that had not been considered by the TTAB. (Dkt. No. 30). A hearing was held before the undersigned Magistrate Judge on the motion for default judgment via Zoom videoconference on November 20, 2020. (Dkt. No. 24). Counsel for the plaintiff appeared, and no one appeared on behalf of the defendant. Counsel for plaintiff represented that there had been contact with purported counsel for defendant on November 4, 2020, and purported counsel represented that he would not be representing defendant in the instant action.

On December 29, 2020, the undersigned Magistrate Judge issued a Report and Recommendation on the motion for default judgment. (Dkt. No. 39). The Court accepted the declaration of Ms. Kobzar as new evidence and applied a *de novo* standard of review to the TTAB proceedings. The Court ultimately recommended that, even under a *de novo* standard of review, the TTAB's decision should be upheld, the cancellation of the mark should be denied, and the motion for default judgment should be denied. (Dkt. No. 39).

On January 19, 2021, plaintiffs objected to the Report and Recommendation. (Dkt. No. 42). Plaintiff submitted an additional declaration that once again had not been submitted to the TTAB or to this Court on the motion for default judgment. (Dkt. Nos. 42-44). On October 25, 2021, the District Court remanded the case to the Magistrate Judge with instructions "to consider

whether to grant GSH leave to file an amended complaint pursuant to Rule 15, or alternatively, whether to apply the substantial evidence standard of review based on the allegations contained in the complaint." (Dkt. No. 49) at 1. Accordingly, the Court provided plaintiff with the opportunity to move for leave to file an amended complaint. (Dkt. No. 50). On March 18, 2021, plaintiff declined that opportunity and now seeks to rely solely on the original complaint. (Dkt. No. 51).

## II. Factual Background

The following facts are established by plaintiff's complaint (Dkt. No. 1). Plaintiff is a limited liability company organized in Cyprus. *Id.* at 4. Defendant is an entity organized in Latvia. *Id.* at 5. Plaintiff is the owner of trademark rights to "SHUSTOFF," "SHUSTOV" and "ШУСТОВ," the Cyrillic version of "SHUSTOV." *Id.* at 6. These trademark rights were assigned to plaintiff by Odessky Konjatschnyi Zawod, a Ukrainian alcohol manufacturing company. *Id.* Plaintiff has trademark rights to these marks in thirty-eight countries and the European Union. *Id.* at 6-7.

Plaintiff filed a trademark application with the United States Patent and Trade Office on July 27, 2017, seeking trademark for the word "SHUSTOFF." *Id.* at 7. The application was denied based on likelihood of confusion with defendant's mark, "SHUSTOV OST." *Id.* Plaintiff additionally filed a Petition of Cancellation of the registration of defendant's mark, asserting defendant had failed to use the mark in the United States for three years (from March 24, 2013, through March 24, 2017). *Id.* A proceeding before the TTAB was held and resulted in a finding that defendant had shown sufficient intent to use the mark. *Id.* at 8. During the period from March 2014 to March 2017, defendant asserts it entered into a license agreement for "production, transportation, importation, distribution, sales and marketing" with a New Jersey company

3

(Tradehouse Shustov), submitted a Certificate of Label Approval ("COLA") application to the U.S. Alcohol and Tobacco Tax and Trade Bureau, and received approval. *Id.* Defendant also established use in the period following March 2017, including a contract for sale of Shustov cognac, an invoice for that cognac, importation and shipping documents from that sale, and an additional COLA application that was approved. *Id.* at 9. The TTAB held that this post-statutory period use "corroborate[d] the existence of [defendant's] intent to commence use of its registered mark during the three-year nonuse period." *Id.* While the TTAB found that plaintiff established a *prima facie* showing of abandonment, defendant rebutted the presumption by showing an intent to use during the nonuse period. (Dkt. No. 1-2) at 24. The TTAB found the declaration of Elena Sorokina, sole owner and Board member of Sia "Baltmark Invest," to be credible. (Dkt. No. 1-2) at 22 ("we find that Ms. Sorokina's unrebutted testimony is clear and convincing and has not been contradicted by any other evidence of record").

### III.     Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal or in rem jurisdiction over a defaulting defendant before it can render a default judgment. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) because this action presents a federal question under 15 U.S.C. § 1071(b)(1), 37 CFR § 2.145, 15 U.S.C. §§ 1064(3) and 1127. Under 15 U.S.C. § 1071(b) and 1121(a), a party to an opposition proceeding may have remedy by a civil action and a court may adjudge whether a registration should be denied. 15 U.S.C. § 1071(b)(4) specifically provides that if there are "adverse parties residing in a plurality of districts not embraced within the same State, or an adverse party residing in a foreign country, the United States District Court for the Eastern District of Virginia shall have jurisdiction." Based on information and belief,

defendant and plaintiff both reside in different foreign countries. Accordingly, this Court has personal jurisdiction under 15 U.S.C. § 1071(b)(4).

In accordance with the Court's Order dated May 5, 2020, defendant has been properly served in this matter. Because defendant failed to file an answer or respond within twenty-one (21) days from the date of service, default was properly entered by the Clerk's Office. (Dkt. No. 11).

## IV. Analysis

### a. *Standard of Review*

As a threshold matter, the Court must assess plaintiff's complaint to determine if new factual evidence was submitted that would necessitate a *de novo* review of the TTAB decision. When the factual findings of the TTAB are "untouched" by new evidence in a complaint before the district court, it is reviewed under a substantial evidence standard. *Belmora, LLC v. Bayer Consumer Care AG*, 338 F. Supp. 3d 477, 484 (E.D. Va. 2018). The Court reviews the TTAB's decision *de novo* "with respect to conclusions of law and for 'substantial evidence' with respect to findings of fact." *Gendale Int'l Corp. v. United States PTO*, 274 F. Supp. 2d 479, 485 (E.D. Va. 2005). A substantial evidence standard requires more than "a mere scintilla" of evidence and requires "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In this case, the "allegations in the Complaint . . . constitute the sole 'factual evidence' to be considered and compared to the TTAB's administrative record to determine the appropriate standard of review." (Dkt. No. 49) at 6. Plaintiff has declined the invitation to seek leave to amend the complaint. Accordingly, the undersigned finds that the allegations in the original complaint constitute the totality of the factual evidence to be compared to the administrative record. Such a comparison reveals that plaintiff has not submitted any "new" or "different"

evidence that would warrant a *de novo* review. Although plaintiff alleges errors on the part of the TTAB, the complaint does not allege new or different facts but rather legal arguments regarding the TTAB's conclusions of law.[1] For this reason, the undersigned recommends application of the substantial evidence standard of review set forth in *Belmora*, 338 F. Supp. 3d 477.

The Court now applies the substantial evidence standard to review plaintiff's claims and determine if default judgment should be entered. Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because

---

[1] Plaintiff presents a new legal argument that the defendant's packaging was not in accord with statutory requirements, and thus was not validly used by defendant in the course of business. The images of the packaging, plus additional photos, were all presented as factual evidence to the TTAB. (Dkt. 1-2 at 21; Administrative Record at A395-A408, Sorokina Declaration Ex. F, Ex. G). In fact, the TTAB had more information than plaintiff has provided to the District Court. While plaintiff asserts that defendant submitted images of improper packaging from 2019, plaintiff in fact submitted to the TTAB images from November 2017 as well. *Id.* Those 2017 images include the label "imported by," which plaintiff contends was absent and made the 2019 packaging improper and excludable. These images are not new factual information; plaintiff merely attempts to use a portion of the images to craft a new legal argument before the District Court.

defendant has not answered or otherwise timely responded, the well-pleaded allegations of fact in the complaint are deemed to be admitted and form the basis for the Court's substantial evidence review.

### b. *Review of the Motion*

15 U.S.C. § 1127 states that a mark shall be deemed "abandoned" if "its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be *prima facie* evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." Because a registration is presumed valid, the party seeking cancellation bears the burden of demonstrating abandonment. 15 U.S.C. § 1057(b). However, after demonstrating a prima facie case of abandonment, the burden shifts to the respondent to show that it used the mark or that it has intended to resume use. *See Imperial Tobacco Ltd. v. Philip Morris Inc.,* 899 F.2d 1575, 14 USPQ2d 1390, 1393 (Fed. Cir. 1990). In this case, the TTAB held that, while plaintiff made a *prima facie* showing of abandonment, defendant established sufficient intent to use the mark. (Dkt. No. 1) at 8. The TTAB's decision is reviewed by this Court under a substantial evidence standard.

Plaintiff makes the following arguments: (1) the TTAB improperly considered evidence of a Certificate of Label Approval ("COLA") application during the nonuse period, (2) the TTAB improperly considered evidence of a licensing agreement in the U.S. during the nonuse period, and (3) the TTAB improperly considered use after the nonuse period.

### i. **COLA Applications**

First, in its complaint, plaintiff argues that the COLA application and approval from 2017 should not be credited because it does not contain the disputed mark. (Dkt. No. 1) at 9; (Dkt. No.

1-7). In its motion for default judgment, plaintiff raises the same concern but references a *different* COLA application from September 12, 2016. (Sorokina Declaration Ex. M, Administrative Record at A427-29).² Plaintiff raised these same concerns before the TTAB. *See* (Dkt. No. 1-2) at 20-21. The TTAB considered both COLA approvals sought and received by defendant's importer, Aiko Importers, Inc., and credited them as evidence of defendant's intent to use the mark. (Dkt. No. 1-2) at 23. The TTAB concluded that the approved labels from the two COLAs do not contain the disputed mark, but found that the mark was used on the outer packaging for the product, thus connecting the disputed mark to the COLA applications. (Dkt. No. 1-2) at 21. The relationship between the COLA applications and later shipment was described by Ms. Sorokina in her declaration and credited by the TTAB. (Sorokina Declaration at A301-03).

To rebut the TTAB's conclusion, plaintiff asserts that the packaging images submitted by defendant as evidence to the TTAB cannot confirm use of the mark in 2019, as they depict packaging not in conformity with regulations (27 C.F.R. § 5.31) and therefore are likely fraudulent. (Dkt. No. 1) at 9-10. Plaintiff's citation to the packaging images from 2019 refer to Exhibit G to the Sorokina declaration (A404-08), submitted to the TTAB. Plaintiff indicates that the 2019 packaging images do not contain the "imported by" language required by statute. *Id.* However, plaintiff's argument disregards evidence that was before the TTAB, and was credited by the TTAB, of additional packaging from November 2017. (Sorokina Declaration Ex. F at A299, 395-403). The 2017 packaging was used in shipment after the COLA applications were approved, includes the "imported by" language that plaintiff claims was missing, and adds

---

² The plaintiff makes the same claim in both the complaint and motion for default judgment, but attaches two different COLA applications. It does appear that both are applications for a slightly different mark than the one in dispute in this case.

8

credence to the claim that the labels were used in commerce. Even if the Court were to credit the allegation that the 2019 packaging was improper and thus did not represent a legal commercial use in the United States, the 2017 packaging, which contains the proper legal labels from just after the nonuse period, establishes legal use in commerce and has not been disputed by plaintiff. (Sorokina Declaration Ex. F).

The TTAB, therefore, properly credited the 2016 and 2017 COLA applications as evidence of intent to use. (Dkt. No. 1-2) at 23. Even if the undersigned Magistrate Judge recommended not considering the 2017 COLA, plaintiff has made no argument for exclusion of the 2016 COLA approval from the nonuse period, which arguably offers more compelling evidence of intent to use. The TTAB's finding was consistent with the evidence, including the COLA applications, images of the packaging, shipment documents, and Ms. Sorokina's declaration. The undersigned recommends affirming the TTAB's decision regarding this issue.

### ii.     Licensing Agreement During Nonuse Period

Second, plaintiff argues that the evidence used to establish the existence of a United States licensing agreement from May 2016—during the period of nonuse—is insufficient. At the TTAB hearing, the licensing agreement was established through the declaration by the owner of the defendant, Elena Sorokina, an invoice dated after the nonuse period, and documents demonstrating the shipping of the products into the United States. The TTAB found this evidence sufficient and credible. (Dkt. No. 1-2 at 23) ("Sorokina was clear and convincing and not rebutted by the record"). If accepted as true, the licensing agreement offers proof that would rebut the claim that there was an "intent not to resume . . . use," which is required to show abandonment. 15 U.S.C. § 1127. Further, the administrative record demonstrates that Ms. Sorokina has testified in other matters before this Court and was similarly found to be credible.

9

*See Zao Odessky Konjatschnyi Zawod v. Sia "Baltmark Invest," et al.*, No. 1:12-cv-00515-JCC-IDD, Dkt. No. 201 (E.D. Va. Feb, 21, 2014) (J. Cacheris). Under the substantial evidence standard, this Court is required to defer to the TTAB with regard to credibility determinations as to the factual evidence below. *See Gendale*, 274 F. Supp. 2d at 485. Therefore, the undersigned finds the declaration of Ms. Sorokina to be credible and sufficient evidence of the licensing agreement during the nonuse period.

### iii. Evidence After Nonuse Period

Third, the defendant argues that the TTAB erred in admitting evidence from after the nonuse period. The TTAB decision states "subsequent use may be probative of whether the registrant intended to commence use during a previous period of nonuse. Such evidence should temporally and logically link the later use to the prior nonuse, such that an inference can be drawn regarding the intent to commence use during the period of nonuse." (Dkt. No. 1-2) at 17. Here, while the evidence submitted was dated after the nonuse period, including the 2017 COLA, packaging images, invoice, and shipping documents, those items were related to the licensing agreement entered into during the nonuse period, making them logically linked.

Plaintiff attempts to argue that the standard the TTAB applied should be whether the defendant used the mark during the period of nonuse; however, the statute clearly states that the test is whether defendant used it, *or showed "intend to resume use." See Imperial Tobacco Ltd.*, 899 F.2d at 1581 (Fed. Cir. 1990) (emphasis added). The TTAB properly considered the evidence in the administrative record and concluded that it established intent to use or to resume use during the nonuse period. The COLA application during the nonuse period, the declaration of Ms. Sorokina, and the invoice are all sufficient to demonstrate an intent to use or resume use of the mark and, therefore, sufficient to rebut the plaintiff's prima facie case of abandonment.

Plaintiff has submitted no evidence to the contrary and, therefore, the undersigned recommends affirming the TTAB's decision in this case.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Denying defendant's motion for default judgment (Dkt. No. 28);

2) Affirming the decision of the TTAB; and

3) Dismissing the case without prejudice.

## VII. Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendant at its address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

April 19, 2021
Alexandria, Virginia